**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**MITCHELL MARBURY,**                    *
                                         *
    **Plaintiff,**                    *
                                         *
**vs.**                                  *   **CIVIL ACTION NO. 19-1103-JB-B**
                                         *
**CYNTHIA STEWART,** *et al.,*           *
                                         *
    **Defendants.**                   *


**REPORT AND RECOMMENDATION**

Plaintiff Mitchell Marbury, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action, which was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R), is before the Court on Defendants' Motion for Summary Judgment. After careful review, it is recommended, for the reasons discussed herein, that summary judgment be DENIED as to Marbury's Eighth Amendment individual capacity claims and that summary judgment be GRANTED as to Marbury's Eighth Amendment official capacity claims and claims for declaratory and injunctive relief.

# I. Summary of Factual Allegations.[1]

## A. Complaint

Plaintiff Mitchell Marbury (Marbury) alleges that William Streeter, a member of the Alabama Department of Corrections Emergency Response Team ("CERT Team"), used excessive force against him on December 3, 2018, when the CERT Team entered A-Dorm (or Alpha Dormitory) to conduct a "shakedown" of the dormitory. (Doc. 1 at 10). The CERT Team shakedown was in response to rival gang violence, which occurred in A-Dorm the previous day and resulted in the death of an inmate. (Doc. 1 at 10). In his complaint, Marbury specifically alleges:

> December 3, 2018 the Ala. Cert Team upon their arrival and entering Alfa Dormitory demanded all convicts to lay face down, with hands behind their heads and their feet crossed. The Ala. Cert Team begin shaking every convict living area down on the high and low side; however, starting from the back working their way to the front of the dormitory.
>
> While plaintiff and others were face down on their beds, plaintiff was instructed by C.O.I., J. Bullard and Warden, William Streeter to get up, squat, cough, and put on his shower shoes and place his hands behind his head and go to the T.V. Room where the rest were instructed to go.
>
> As plaintiff was exiting his living bed [area], attempting to appear non-threatening and comply with orders as instructed, with his hands behind his head; for no apparent reason, plaintiff was attacked from behind by William Streeter, who hit plaintiff in the facial area, knocking plaintiff to the floor, busting

---

[1]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

plaintiff mouth and nose, that required plaintiff to be taken to the prison infirmary upon the order of the Warden, Cynthia Steward and Commissioner Cheryl Price, who upon their observation walk through, after the shake down, was put on notice, by plaintiff and others of the attacks by the Ala. Cert Team to have plaintiff and others taken to the prison infirmary to be treated and cared for.

During this entire incident, plaintiff did not resist and contends these action were taken for the sole purpose of causing harm and inflic[t]ing pain.

Defendant J. Bullard was present but did nothing to restrain defendant W. Streeter or stop the abuse of plaintiff.

Upon entering the infirmary, plaintiff was treated by Nurse Simmons; afterw[ard], a week or two later plaintiff was Ex-Rayed due to experiencing numbness to the left side of his facial [area] that lasted approximately two months before the numbness subsided. Plaintiff was informed by a specialist "Dr. Karen Jones" that the Ex-Ray revealed the tip of plaintiff nose was chipped.

Plaintiff submitted complaints to defendant Cynthia Steward who refused to investigate the matter or to take disciplinary action against the defending officers as provided for in administrative regulations 207 and 208.

Defendant Cynthia Steward ha[s] refused to take any remedial action to prevent the assaults against inmates such as Marbury. In addition, these defendants have been aware of widespread abuse at Holman Correctional Facility.

(Doc. 1 at 10-11).

Marbury is suing Warden Cynthia Stewart, Warden William Streeter, and Officer J. Bullard for the use of excessive force against him and for failing to protect him in violation of his Eighth Amendment rights. Marbury seeks monetary damages against

each defendant ($100,000 award for compensatory damages and $200,000 for punitive damages), injunctive relief, trial by jury, all expenses related to the suit, and any further relief this court deems just and proper. (Doc. 1 at 8).

**B.    Defendants' Motion for Summary Judgment**

Defendants filed answers denying Marbury's allegations against them and filed special reports in support of their positions. (Docs. 19, 20). Along with their special reports, Defendants also submitted the Incident Report from December 3, 2018, and their personal affidavits.

Defendants contend that, on December 2, 2018, an altercation between rival gang members in A-Dorm resulted in the stabbing death of an inmate. The next day, December 3, 2018, the Southern, South Central, and Central CERT teams conducted a search of the Holman dormitories, including A-Dorm and confiscated prison made knives, cell phones, chargers and drugs.[2] (Doc. 19-1). As noted, Defendants have also submitted their personal affidavits, which are summarized as follows:

---

[2]    The institutional search of A-Dorm resulted in the confiscation of 15 prison made knives, 11 cell phones, and 4 cell phone chargers; the search of B-Dorm resulted in the confiscation of 15 knives, 10 cell phones, 6 chargers; the search of C-Dorm resulted in the confiscation of 20 knives, 15 cell phones, 20 chargers, 114 flakka sticks, approximately 10 grams of ICE and 12 Suboxone strips; and the search of D-Dorm resulted in the confiscation of 2 cell phones. (Doc. 19-1).

Warden William Streeter avers that on December 3, 2018, he was assigned as the Southern Region CERT Team Commander and on that day, he entered A-Dorm with the CERT Team to search for contraband and confiscate prison made weapons. Streeter avers that different gang leaders and members were concentrated in A-Dorm, and they were known to openly engage in unlawful activity, including gang initiations and narcotics. According to Streeter, these individuals acted, without fear of being disciplined, due to increasingly less control over A-Dorm as a result of lack of staff and concerns about confronting dangerous inmates concentrated in A-Dorm. Streeter contends that Marbury has falsely accused him of attacking Marbury from behind and causing him to bust his mouth and nose. Streeter maintains that, "[t]his did not happen." He also declares that at no time did he use any type of abusive or excessive force against inmate Marbury nor did he violate Marbury's rights. (Doc. 19-2).

Officer Jermaine Bullard avers that he entered A-Dorm on December 3, 2018, as a member of the CERT Team. He further avers that he has "no knowledge of the allegations made by Marbury. Bullard maintains that at no time did [he] abuse any inmate nor did [he] witness any CERT Team member abuse inmate Marbury or any inmate. Inmate Marbury[sic] allegations are untrue and unfounded." (Doc. 19-3).

Cynthia Stewart avers that on December 3, 2018, she was employed as Warden III of Holman Correctional Facility. Stewart asserts that she requested an institutional search of the facility by the CERT Team conduct but was not present when the CERT Team entered the facility. According to Stewart, she made "a round through the facility while the CERT TEAM was inside," and she spoke with several inmates. She does not recall whether Marbury was one of the inmates with whom she spoke. Stewart avers that she reviewed Marbury's inmate file, and it does not reflect that he was seen in the Health Care Unit on December 3, 2018, or that Marbury was involved in an incident. Stewart does "not recall receiving a complaint from inmate Marbury" and asserts that all uses of force are investigated by a Captain with the I & I Division. Stewart maintains that at no time has she observed or permitted "any abuse, assault or excessive force to any person" and that "if any staff violated any portion of A/R #208 and corrective action is warranted," she did not hesitate to carry out the procedures and protocols established by the Alabama Department of Corrections. (Doc. 19-4).

Upon review of Defendants' Answer and Special Report (Doc. 19, 20), the Court entered an order notifying the parties that Defendants' Answer and Special Reports were being converted into a motion for summary judgment (Doc. 21). The Court also advised that the parties were permitted to file responses and materials in

support or opposition to the motion. (Id.). Marbury filed a response and materials in opposition. (Dos. 22, 23, 26). The motion for summary judgment is now fully briefed and ripe for consideration.

Defendants contend that Marbury's claims are due to be denied because "there are no institutional or medical records that record the event," and there are "no records of inmate Marbury's alleged complaints to Warden Stewart of the abuse he alleges." (Doc. 19 at 4-5). They further contend that Marbury's claims of injury are not substantiated to have occurred during the CERT team intervention of December 3, 2018, and the injuries that are subsequently documented are *de minimis*.[3] According to Defendants,

---

[3]    "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. at 38. Until recently, it is was well settled in the Eleventh Circuit that a prisoner could not recover compensatory or punitive damages for a constitutional violation unless he could demonstrate a more than *de minimis* injury. See Brooks v. Powell, 800 F.3d 1295, 1307 (11th Cir. 2015) (collecting cases construing § 1997e(e) of the PLRA). Without a more than *de minimis* injury, the plaintiff could only recover nominal damages. Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (A plaintiff claiming a violation of his constitutional rights is entitled to nominal damages "even if he cannot prove actual injury sufficient to entitle him to compensatory [or punitive] damages."). However, the Eleventh Circuit has reversed its course, holding that "the PLRA 'does not bar *punitive* damages in the absence of physical injury,' overruling prior precedent to the contrary." Rodriguez v. Powell, 2021 U.S. App. LEXIS 12762, *20, 2021 WL 1688766, *7 (11th Cir. Apr. 29, 2021)(quoting Hoever v. Marks, U.S. App. LEXIS 10260, 2021 WL 1326618, *3 (11th Cir. Apr. 9, 2021)(emphasis in original)).

Marbury has failed to establish an Eighth Amendment claim, and, thus, they are entitled to qualified immunity and summary judgment. (Id. at 5).

## C. Plaintiff's Response to Defendants' Motion for Summary Judgment

Marbury has responded in opposition to Defendants' motion for summary judgment and produced additional evidence in support of his claim.[4] (See Docs. 22-23, 26). In response to Defendants' motion, Marbury reiterates the claims articulated in his complaint and adds the assertion that Cynthia Stewart entered A-Dorm approximately five minutes after the CERT Team's arrival and, while the assaults were occurring, stated, "[a]lright, we'll see who's the gangstas now, this ass kicking going to make you realize who's the real gangstas." (Doc. 22 at 3; Doc. 23 at 5) (grammar and spelling alterations). Marbury further asserts that Cynthia Stewart then left the dorm and returned with Cheryl Price after the assaults ended, and she ordered inmates be taken to the health care unit. (Doc. 22 at 3; Doc. 23 at 5). Marbury also produces the affidavit of A. Washington, AIS # 00220890, who confirms the

---

[4] Following the conversion of Defendants' special report to a motion for summary judgment, Marbury moved for the production of documents (Doc. 24), which the court granted, in part. (Doc. 25). In response to the Court's order, Defendants produced documents, including the relevant Administrative Regulations and Marbury's medical records (none of which were included in Defendants' special report). (See Doc. 19). The Court will consider these documents as part of Plaintiff's evidence in opposition to summary judgment.

statement purportedly made by Cynthia Stewart in A-Dorm and asserts that he saw William Streeter hit Marbury as Marbury exited their bed area, while Jermaine Bullard "stood by and looked on."[5] (Doc. 23 at 4).

Marbury also submitted a copy of a handwritten letter dated December 6, 2018. The letter is addressed to Mrs. Stewart and allegedly signed by Mitchell Marbury on December 6, 2018. (Doc. 23 at 6). The letter reads as follows:

> Dear Mrs. Stewart,
>
> I would like to thank you, for allowing me and other inmates, the opportunity to be escorted to the prison infirmary to be attended to by medical personal Ms. Simmon.
>
> Truly I feel it was inappropriate of you to give an order to the (ADOC) Cert from officials, who upon your order, felt it was appropriate to continue their act of misconduct, by assaulting inmates in A-Dormitory December 3, 2019.[6]
>
> Honestly, how can one feel safe, or protected where your superintendent act of misconduct is in totally disregards of the prison institutional policy of Holman Correctional Facility. I realise inregards (sic)of you action, you as well as your employees needs to be reprimanded in hope of producing a safe environment to live in, according to the true nature this environment was design for.

---

[5] The affidavit signed by Washington is not dated, and in the affidavit, Washington asserts that the incident occurred on December 3, 2019.

[6] While Marbury's handwritten letter is dated "12/6/2018", in the body of the letter, Marbury lists "December 3, 2019" as the date of the assault. (Doc. 23 at 6).

Most of all, it would be my pleasure to let you
    know. You will be hearing from me in the near future,
    when I decide to file a § 1983 civil claim.

(Doc. 23 at 6). Marbury relies on his medical and mental health

records in support of his allegations. As is relevant to this

action, the records are summarized by date as follows:

December 3, 2018     Mental Health note states that counselor is
unable to see Marbury due to ADOC lockdown per
Warden Stewart. (Doc. 26-1 at 177).

December 5, 2018     A body chart reflects that Marbury asked to be
"checked out" and is examined by "nurse
Simmons" for complaints of a headache after
being "hit in the head". Left eye swelling
and left eye redness are observed. Marbury
maintains the onset of headaches was
approximately 30 minutes earlier. (Doc. 26-3
at 22-23).[7] Marbury was prescribed 200 mg of
Ibuprofen, to be taken twice daily. (Doc. 23-
1 at 94).

December 6, 2018     Sick call request: "I was hit in the left eye
and mouth, my eye and head are aching and
especially the eye I had surgery on feel as if
it out of its socket. My nose feel as if it
might be fractured. So I would request an ex-
ray." (Doc. 26-3 at 21).

December 9, 2018     Sick call request: "Everytime I blow my nose,
my eye, feel as if its out of it socket. I
would like to be seen by a ex-ray physician to
see if my left eye is ok." (Doc. 26-3 at 20).

December 11, 2018    Sick call request: "I would like to be sent
out to be seen or ex-rayed by a free world
medical physician. Blood is coming up from
where I was hit by the Ala. D.O.C. (CERT team)
that left the left side of my face partially

---

[7] The record also contains a Restrictive Housing Record dated
December 5, 2018. The Housing Record reflects that Marbury was
placed in segregation on that date, but there is no indication of
the reason for his placement. (Doc. 26-1 at 44).

paralyzed or num[sic]. When I blow out my nose its excruciating [] if my eye ball is out its socket, and my nose hurts." (Doc. 26-3 at 19).

Marbury was examined for complaints of a headache, following an "altercation with DOC", and "pressure on [his] nose". (Doc. 26-3 at 17-18). He was proscribed Loratadine(Claritin) and 200 mg of Ibuprofen.

Mental Health note reflects that that counselor met with Marbury in the Segregation Shift Office, and that "Patient's left eye was noticeably swollen and that Patient said he also has numbness on the left side of his face. Patient said he previously had surgery on the same eye to put a stent in it. He is concerned his injury may have damaged what the surgery corrected. Patient has safety concerns related to killings and stabbings at Holman. Patient said he is trying to avoid exploding in anger. . . . ." He was diagnosed with depression and prescribed Remeron. (Doc. 26-1 at 176)

December 12, 2018     Radiological report of x-ray of Marbury's facial bones, finding "Mildly displaced fracture of the distal nasal bridge. Left ocular prosthesis." (Doc. 26-3 at 60).

December 26, 2018     Sick call request: "I've been having headache since a cert team member Dec. 3, 2018 hit me on the left side of my face." (Doc. 26-3 at 15).

Marbury was evaluated for headaches that he stated he had had for approximately 3 weeks, since December 3. (Doc. 26-3 at 14). He was prescribed 325 mg of Tylenol.

December 31, 2018     Sick call request: "I'm requesting to be screen by a free world medical personal. My reason because the left side of my face is still feeling num where on Dec. 3, 2018 I was hit from behind by a ADOC CERT team member." (Doc. 26-3 at 13).

January 4, 2019    Marbury was examined by the nursing staff for
                   complaints that the left side of his face was
                   numb.  Marbury stated that he "was hit in the
                   face" on Dec. 3.  Marbury was prescribed 325
                   mg Acetaminophen for discomfort, and referred
                   to the Nurse Practitioner. (Doc. 26-3 at 12)

January 7, 2019    Marbury was examined by a Nurse Practitioner
                   for numbness in left maxilla and nasal fold
                   and left upper lip numbness. The Nurse
                   Practitioner noted the date of onset as
                   "1/2018 [b]lunt [f]orce [t]rauma on left side
                   of face" and submitted referral for ENT
                   consult for "facial numbness after trauma".
                   (Doc. 26-3 at 59).

January 15, 2019   ENT referral request is denied by Dr. Hood.
                   Dr. Hood commented:
                   "Received referral request for ENT evaluation
                   of nasal fracture and reports of facial
                   numbness – per referral patient involved in
                   altercation 1/2018 – per referral patient hit
                   in eye area with 20 lb weight – sent to UAB ER
                   at that time – DX inferior orbital floor FX –
                   vision OS decreased per note due to HX of
                   glaucoma and berling edema (per 1-9-18 note
                   nerve OS "severely affected by glaucoma) –
                   also had CT done at this ER visit that revealed
                   mildly displaced left nasal bone fracture –
                   per referral patient reports nasal congestion
                   – no improvement per patient with nasal –
                   decongestants – updated xray done 12/12/18
                   shows mildly displaced FX of the distal nasal
                   bridge – case reviewed and decided to continue
                   onsite mgmt./observation instead – patient to
                   F/U wit onsite optometry glaucoma clinics –
                   consider visit w/ onsite dentist – represent
                   as needed."  (Doc. 26-3 at 61).

January 22, 2019   Dental exam revealed no pathology to explain
                   numbness in face.  Patient was not hurting in
                   teeth.  Plan to refer back to medical.  (Doc.
                   26-3 at 26).

## II. Summary Judgment Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted)).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011)("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record — such that no reasonable jury could believe it — a court should not adopt the contradicted allegations.")(citations omitted)(unpublished)).

### III. Discussion and Analysis.

A.    Immunity Defenses

To the extent Marbury is proceeding against the correctional officer defendants in their official capacities, those claims fail.  The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state."  Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment."  Id. (citing Kentucky v. Graham, 473 U.S. 159, 166-67 (1985)).  Accordingly, the correctional officer defendants in this action, all of whom were employed by the State of Alabama Department of Corrections at the time of the incidents alleged in the complaint, are immune from suit in their official capacities.

See <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), *overruled on other grounds* <u>Turquitt v. Jefferson Cnty.</u>, 137 F.3d 1285 (11th Cir. 1998)("[S]uits against an official in his or her official capacity are suits against the entity the individual represents."). Thus, summary judgment should be **GRANTED** to Defendants on Marbury's official capacity claims.

Regarding individual capacity, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Dalrymple v. Reno</u>, 334 F.3d 991, 994 (11th Cir. 2003)(quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)). Marbury does not dispute that the Defendants were acting within their discretionary authority at all times during the incident in question. With respect to claims of excessive force, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in <u>Hudson</u> and <u>Whitley</u>." <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002)(citation omitted). Just as there is "no room for a qualified immunity defense when the plaintiff alleges" that a Defendant used "excessive force in

violation of the Eighth Amendment," Skrtich, 280 F.3d at 1301, a reasonable correctional officer would know that he violates an inmate's rights when he fails to intervene during a fellow officer's use of excessive force against the inmate. See Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000)("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]")(alterations in original)(citing Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998)). Additionally, the law is well established that, while supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability, see Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010), a supervisor can be held liable when the supervisor either "personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (citation omitted).

Defendants argue that they are entitled to qualified immunity because their alleged actions do not violate any clearly established constitutional or statutory rights. However, given Marbury's allegations that Streeter attacked him from behind

unprovoked, that Bullard watched and failed to intervene, and that during the attacks, Stewart announced "[a]lright, we'll see who's the gangstas now, this ass kicking going to make you realize who's the real gangstas," and the extant case law set forth above, qualified immunity is not appropriate.

**B.   Claims Under 42 U.S.C. § 1983**

As noted, *supra*, Marbury has brought this action pursuant to 42 U.S.C. § 1983.  "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that the named defendants, as employees of the Alabama Department of Corrections, are state actors for purposes of this action.  Thus, to establish his excessive force claims, Marbury must establish that the named defendants, personally, acted to deprive him of a constitutional right.

**1. Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates.  Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  In order to establish an Eighth Amendment excessive force claim against the defendants,

Plaintiff must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citations omitted); see also Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the objective conduct, the plaintiff must show the complained of conduct "shocks the conscience"). Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).

While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it is "of a sort repugnant to the conscience of mankind." See Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim)(internal quotation marks and citation omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because

he has the good fortune to escape without serious injury." Id. at
38.

> Under the Eighth Amendment, force is deemed legitimate
> in a custodial setting as long as it is applied "in a
> good faith effort to maintain or restore discipline [and
> not] maliciously and sadistically to cause harm."
> Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078,
> 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481
> F.2d 1028, 1033 (2nd Cir.1973)); see also Hudson v.
> McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d
> 156). To determine if an application of force was applied
> maliciously and sadistically to cause harm, a variety of
> factors are considered including: "the need for the
> application of force, the relationship between that need
> and the amount of force used, the threat reasonably
> perceived by the responsible officials, and any efforts
> made to temper the severity of a forceful response."
> Hudson, 503 U.S. at 7-8, 112 S. Ct. 995; see also Whitley,
> 475 U.S. at 321, 106 S.Ct. 1078; Harris v. Chapman, 97
> F.3d 499, 505 (11th Cir. 1996). From consideration of
> such factors, "inferences may be drawn as to whether the
> use of force could plausibly have been thought necessary,
> or instead evinced such wantonness with respect to the
> unjustified infliction of harm as is tantamount to a
> knowing willingness that it occur." Whitley, 475 U.S. at
> 321, 106 S. Ct. 1078 (quoting Johnson, 481 F.2d at 1033).

Skrtich v. Thornton, 280 F.3d 1295, 1300-01 (11th Cir. 2002).

Accordingly, in determining whether or not force used was

excessive, relevant factors include the "need for the application

of force, the relationship between that need and the amount of

force used, the threat reasonably perceived by the responsible

officials, and any efforts made to temper the severity of a

forceful response." Skrtich, 280 F.3d at 1300. Notably, prison

officials "acting to preserve discipline and security" are given

"broad deference" when evaluating whether force used was excessive

or not.  Pearson v. Taylor, 665 F. App'x 858, 863-64 (11th Cir. 2016).

As the record currently stands, the parties' versions of the facts are hotly contested, and neither version is blatantly contradicted by the record.  Defendants categorically deny that any force, let alone excessive force, was used against Marbury and contend his claims are wholly unsubstantiated by the record.  They note that the record is devoid of any documentation, including a use of force incident report, body chart, or medical record for the date of the alleged incident, December 3, 2018.  Marbury, however, has put forth a sworn witness affidavit, as well as sick call requests, nursing notes, and a radiology report (from the days and weeks following the incident) which support his version of the facts.

The law is clear that, at the summary judgment stage, it is not the function of the reviewing court to weigh the evidence and determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 252.  Where a material fact is disputed, the nonmovant's version of the fact is presumed to be true.  Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1139-40 (11th Cir. 2007)(citing Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co., 802 F.2d 1352, 1356 (11th Cir. 1986)("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found,

summary judgment must be denied.")); <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1227 (11th Cir. 2004), <u>cert. denied</u>, <u>De Armas v. Kingsland</u>, 543 U.S. 919 ("The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.") (citing <u>Rowe v. City of Fort Lauderdale</u>, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)).

In this case, the parties' versions of the incident in question are in direct opposition to one another, the resolution of which turns on an issue of credibility. Not only is this Court prohibited, at the summary judgment stage, from making credibility determinations, but because Marbury is the nonmoving party, the Court must construe the facts in the light most favorable to him and draw all reasonable inferences from those facts in his favor. <u>Bradley v. Franklin Collection Serv., Inc</u>., 739 F.3d 606, 608 (11th Cir. 2014). Moreover, where a conflict exists between the parties' allegations or evidence, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." <u>Shotz v. City of Plantation, Fla</u>., 344 F.3d 1161, 1164 (11th Cir. 2003). Accepting, for purposes of this motion <em>only</em>, Marbury's version of the events as true, a reasonable fact finder could conclude that on December 3, 2018, Marbury was complying with directives during the CERT Team search of Dorm A, when Defendant Streeter struck him from behind and resulted in him being knocked

to the floor and sustaining injury to his left eye and nose. Such facts would be sufficient to establish liability under the Eighth Amendment.[8] Because Marbury has established a genuine dispute of material fact regarding whether or not Defendant Streeter used excessive force against him, summary judgment on Marbury's Eighth Amendment excessive force claim against Defendant Streeter is due to be DENIED.

As to Marbury's excessive force claim against Defendant Stewart, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)(internal quotation marks and citation omitted). If a supervisor's liability cannot be established based on the supervisor's personal participation in the complained acts, a plaintiff must show a causal connection between the supervisor's

---

[8] The undersigned observes in passing that Marbury has presented conflicting facts. For instance, in his complaint, Marbury alleges that Warden Stewart and Commissioner Price walked through the area *after* the shakedown and were put on notice by Plaintiff and others of the attacks by the Ala. Cert Team and that Stewart ordered that Marbury be taken to the prison infirmary for treatment. (Doc. 1 at 10). In a later-filed affidavit, Marbury indicates that Warden Stewart entered A-Dorm five minutes after the CERT Team arrived, and *during* the assaults, Stewart announced, "Alright, we'll see who's the gangstas now, this ass kicking going to make you realize who's the real gangstas." (Doc. 22 at 3; Doc. 23 at 5)

actions and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). A custom is established by showing "a longstanding and widespread practice [such that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991)(A custom requires showing a practice so settled and permanent that it takes on the force of law). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." West Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007)(quotation marks and citations omitted).

As noted, in his affidavit, Marbury has alleged that Defendant Stewart entered A-Dorm approximately five minutes after the CERT Team arrived and in the midst of the CERT Team assaults, she allegedly announced, "[a]lright, we'll see who's the gangstas now,

this ass kicking going to make you realize who's the real gangstas."
(Doc. 22 at 3)(alterations to grammar and spelling).  Such a
statement could reasonably be inferred as evidence that Stewart
was not only aware of the unlawful conduct by her subordinates,
but that she directed them to attack the inmates and failed to
stop them from so doing.  Accordingly, Marbury's allegation is
sufficient to establish deliberate indifference under the Eighth
Amendment.  The undersigned thus recommends that summary judgment
be DENIED as to the excessive force claim asserted against
Defendants Stewart and Streeter.

### 2. Failure to Protect

Marbury alleges that Defendant Bullard was present at the
time excessive force was used against him and did nothing to stop
it.  A prison official violates the Eighth Amendment when he or
she acts with deliberate indifference to a substantial risk of
serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828
(1994).  "An officer who is present at the scene [of an altercation]
and who fails to take reasonable steps to protect the victim of
another officer's use of excessive force can be held liable for
his nonfeasance."  Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th
Cir. 2008).  But, an officer may only be liable for failing to
protect if the officer was in a position to intervene yet failed
to do so.  Priester v. City of Riviera Beach, Fla., 208 F.3d 919,
924 (11th Cir. 2000).  Taking Marbury's version of the facts as

true, for purposes of this motion *only,* CERT Team officers entered A-Dorm on December 3, 2018, to conduct a shakedown in response to rival gang violence that occurred the day before. As noted, Marbury alleges that, without any provocation, Streeter attacked him from behind, and Defendant Bullard took no steps to intervene. Marbury further asserts that during the assaults, Stewart stated "this ass kicking going to make you realize who's the real gangstas." Bullard acknowledges that he was in A-Dorm on December 3, 2018, during the CERT Team search but denies that he saw anyone abuse Marbury or any other inmate. The failure to intervene claim is a close question because Marbury offers no facts that reflect where Defendant Bullard was positioned in relation to Marbury (or Streeter) during the alleged attack, nor how long the alleged attack occurred. Although a close call, the undersigned finds that a genuine issue of material fact remains as Marbury asserts that both Bullard and Streeter were giving him orders, and although he complied with their orders, Streeter attacked him. These assertions, coupled with his contention that during the assaults, Warden Stewart made a statement that could be viewed as encouraging the attacks, creates a jury question of whether Bullard failed to intervene and protect Marbury from Streeter's alleged use of excessive force on December 3, 2018. Because it is premature to decide this claim based on the current record, the undersigned recommends that summary judgment be DENIED.

**C.  Declaratory and Injunctive Relief**

Marbury requests entry of a declaratory judgment and injunctive relief as to all of the Defendants.  However, the record indicates that, as of March 5, 2020, Marbury was transferred from Holman Correctional Facility to St. Clair Correctional Facility, and Marbury has not alleged that he will or is likely to return to Holman.  (Doc. 9).  Due to Marbury's transfer, his declaratory and injunctive relief requests are moot.  As stated in Lolley v. Louisiana Corr. Servs., 2012 WL 2154500 (S.D. Ala. Jun. 13, 2012), "an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."  Id. (quoting Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985); Harrison v. Culliver, 2008 WL 2788352, at *3 (S.D. Ala. Jul. 17, 2008)(same); Harkless v. Toney, 2012 WL 1946506, at *6 (S.D. Ala. Mar. 16, 2012)("Because a claim for injunctive relief is a prospective remedy, when the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury.")(quoting Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir.1997)(internal punctuation omitted)); see also Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988)("Absent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to

present a case or controversy once the inmate has been transferred[]").

Moreover, the relief (declaratory and injunctive) sought by Marbury is *prospective* (future looking). "Declaratory relief is by its nature prospective." McGee v. Solicitor Gen. for Richmond Cnty., Ga., 727 F.3d 1322, 1325 (11th Cir. 2013). "In contrast, a claim for money damages looks back in time and is intended to redress a past injury." Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). To have standing to seek declaratory relief, a plaintiff "'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004). "[T]he continuing controversy . . . must be real and immediate, and create a definite, rather than speculative threat of future injury." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). A remote possibility of a future injury occurring is not adequate. Id. Likewise, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief if the party alleges . . . a real and immediate – as opposed to a merely conjectural or hypothetical -- threat of *future* injury." Church v. City of Huntsville, 30 F. 3d 1332, 1337 (11th Cir. 1994) (emphasis in original). Marbury has not made a specific showing (or even an allegation) of any likelihood of being subjected to unlawful conduct (or future injuries) by a named

28

Defendant *in the future*. See <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 104 (1983) (merely asserting that one may again be subject to unlawful conduct does not generally give rise to standing to demand prospective relief). As noted, *supra*, Marbury was transferred from Holman and is currently incarcerated at a different facility. For these reasons, Marbury's requests for declaratory and injunctive relief are dismissed as **MOOT.**

### IV. Conclusion.

Based on the foregoing, the Court **RECOMMENDS:**

(1) that the above-referenced motions for summary judgment be **GRANTED** as to the **official capacity claims** against all of the Defendants;

(2) that the above-referenced motions for summary judgment be **DENIED** as to the **Eighth Amendment individual capacity claims** against all of the Defendants; and

(3) that Plaintiff's claims for **declaratory and injunctive relief** be **DISMISSED** as **MOOT.**

**DONE** this **4th** day of **May, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**